JOHN RAIMO, PETITIONER-APPELLEE, v. FORD MOTOR
COMPANY, RESPONDENT-APPELLANT.

Decided June 16, 1936.

For the petitioner-appellee, *Patrick V. Mercolino* and
*George T. Vickers*.

For the respondent-appellant, *McCarter & English*.

LEYDEN, C. P. J. This is an appeal from the determina-
tion of the bureau awarding temporary disability from March
6th to March 23d, 1935, and permanent disability for a fifty-
five per cent. loss of the right eye, or fifty-five weeks at $16.67
per week. The question presented is whether the detach-
ment of the retina of petitioner's right eye is the result of an
accident arising out of and in the course of his employment,
or the natural progress of a disease with which petitioner is
afflicted.

Petitioner was employed in the body assembly section of
the plant of the respondent where he was engaged in joining
the wooden support for the dome light to the center roof
bows, preparatory to that unit being placed in position by a
succeeding workman on the construction line.

When the petitioner was first employed in November, 1933,
his physical examination by the respondent's doctor disclosed
an ankylosed condition of the right knee, the result of opera-
tions performed in 1912 and 1925 in an endeavor to correct
the tubercular condition thereof. A history of tuberculosis
and the operations was given by the petitioner himself. The

result of the test for acuity of vision was 20/20 for both eyes, which is considered normal. He worked steadily until respondent closed its plant in August, 1934. In the December following the plant reopened and petitioner was again physically examined upon his re-employment. This examination confirmed the tuberculosis and ankylosis of the right knee. At this time the eye test showed that while the vision of petitioner's left eye was 20/20, the vision of his right eye was 20/100, or a forty-five per cent. loss. A forty-five per cent. impairment is considered industrial blindness and therefore petitioner was instructed by the plant physician to' obtain eyeglasses.

A roof bow is a piece of wood one inch by one·inch by three feet long weighing from one-half to one pound. Petitioner testified that at one-thirty P. M. on February 15th, 1935, while he was reaching above his head for a bundle of twenty-five bows from a supply rack, one of them slipped from the bundle and its end struck him in the right eye. Although he says he suffered intense pain, he did not seek first aid, but continued to work for the balance of the day. The first aid department is located at the employe's entrance to the plant and is open twenty-four hours a day. The plant was closed on the following two days, Saturday and Sunday. He reported for work on Monday and about two P. M. made his first visit to the medical department, complaining that his eye had been injured on the Friday previous. He was examined by the plant doctor who found no objective external evidence of trauma, but since he subjectively complained of an impairment of vision, he was sent on February 19th to Dr. Alexander L. Smith, an eye specialist of Jersey City. Dr. Smith found a perfectly normal looking eye externally, and no evidence of a traumatic injury either externally or internally to any portion of the eye. However, he did discover that the retina was detached from its fellow, the choroid, and was studded with small unconnected grayish spots which he determined to be tubercles. His vision in that eye, four days after the alleged accident, on Dr. Smith's test for acuity, was 20/100.

Petitioner continued to work for the respondent until March 6th, 1935, when he quit at the suggestion of one of his physicians. Thereafter he was examined by an eye specialist of his own choice on two occasions. On the first, March 16th, there was some vision and the detachment of the retina. On the second, December 3d and 4th, the vision was reduced to the state wherein petitioner could only discern the movement of a hand at a distance of six inches from the eye.

An examination of all of the evidence leads to the conclusion that the petitioner's impairment of vision is not due to an accident arising out of and in the course of his employment, but is the result of the progress of the disease with which the petitioner is afflicted, tuberculosis. Petitioner's story of the happening of the accident and his subsequent conduct are irreconcilable, unreasonable and improbable. It is difficult to believe that if he were struck in the eye, a most delicate organ, with sufficient force to detach the retina, that he was able to continue work, although suffering intense pain; and it is incredible that he did not seek the services of a physican to alleviate that pain until three days after the alleged happening. He passed the first aid department twice daily during his employment and knew its location. Likewise such an accident would have left some evidence of its happening on the eyeball itself or its surrounding tissue in the form of a contusion, laceration, or external or internal inflammation or hemorrhage, even after a period of three or four days. There was none, although he insists the severe pain persisted. It might be here pointed out that detachment of the retina due to trauma, is very rare.

Petitioner produced medical testimony in an effort to support his claim, but this evidence on the question of the causal connection between the alleged accident and the injury leaves us in the realm of speculation and conjecture. Petitioner's eye specialist would go no further than to say that if a stick of wood fell and struck petitioner in the eye, that that fact *could be* a causative agent for the condition which he found. This is not enough to support the inference of liability. If

he is to succeed, petitoner must show more. *Jacques Wolfe & Co.* v. *Piplin,* 14 *N. J. Mis. R.* 146; 183 *Atl. Rep.* 187.

Here the petitioner has a history of tuberculosis. While it is true that tuberculosis in the human being occurs primarily in only one of two locations, the pulmonary tract or the digestive tract, it may appear in any part of the body as a secondary condition after remaining quiescent for many years in the primary focus. In this case petitioner's tubercular condition was progressive. Arbitrarily selecting the date of the physical examination at the plant of the respondent in November, 1933, as the beginning, and the examination by his own specialist in December, 1935, as the end of a period, it is found that the tubercular condition of his right eye had progressed from normal to a forty-five per cent. loss in December, 1934, and an almost total loss in December, 1935. In this connection it will be noted that upon Dr. Smith's examination on February 19th, four days after the alleged accident, his vision was 20/100, with no increase in disability. It may reasonably be inferred from the evidence, therefore, that the loss of vision was the result of the natural progress of his disease, namely tubercular retinitis, and the blow from the stick, if such be the fact, had no causal connection with the detachment of the retina.

The medical proof submitted in behalf of the respondent is clear and convincing upon this point. It demonstrates that even if the alleged accident did occur as related by the petitioner, it did not cause or aggravate petitioner's then present condition. As was aptly pointed out by Mr. Justice Bodine, "compensation does not go for injuries caused by the natural progress of a disease from which a workman is suffering." *Hahne & Co.* v. *Guenther,* 114 *N. J. L.* 571; 178 *Atl. Rep.* 58.

The loss of the sight of an eye is a most serious affliction, but examination and re-examination of the case leaves the inescapable conviction that the petitioner has not proved his claim by a fair preponderance of the evidence.

I will sign a determination dismissing the petition.